Notice: This opinion is subject to formal revision before publication in the
Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify
the Clerk of any formal errors in order that corrections may be made
before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 26, 2004        Decided May 14, 2004

No. 02–1358

PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

TRANS–ELECT, INC., ET AL.,
INTERVENORS

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

*Todd Edmister* argued the cause for petitioner. With him
on the briefs was *Arocles Aguilar*. *Gary M. Cohen* entered
an appearance.

*Dennis Lane*, Solicitor, Federal Energy Regulatory Com-
mission, argued the cause for respondent. With him on the
brief was *Cynthia A. Marlette*, General Counsel.

Before: SENTELLE, RANDOLPH, and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

Opinion concurring in part and dissenting in part filed by
*Circuit Judge* ROGERS.

---

Bills of costs must be filed within 14 days after entry of judgment.
The court looks with disfavor upon motions to file bills of costs out
of time.

RANDOLPH, *Circuit Judge*: High voltage transmission lines, known as Path 15, extend from southern to northern California. Path 15 is the principal means of transmitting electricity between these two regions of the state and into the Pacific Northwest. Energy produced in Southern California comes mainly from natural gas-fired generators; in Northern California and the Pacific Northwest, hydroelectric generation predominates. In the winter, energy typically flows from south to north. Summer flows are in the opposite direction. The movement of power along Path 15 is often constrained because of its lack of capacity to handle the transmission of power in the summer and winter months.

The issue in this case is whether the Federal Energy Regulatory Commission properly approved, as part of a project to increase the capacity of Path 15, incentives for Pacific Gas and Electric Company (PG&E) to recover its costs in building or upgrading facilities.

The issue arose during Commission proceedings under § 205 of the Federal Power Act, 16 U.S.C. § 824d, in which the Western Area Power Administration (WAPA), on behalf of itself and PG&E and Trans–Elect, Inc., sought approval of a Letter Agreement setting forth the rights and obligations of the parties with respect to the Path 15 Project. WAPA, a component of the United States Department of Energy, markets and transmits electric power from hydroelectric projects in the West using Path 15. In May 2001 the National Energy Policy Report recommended to the President that WAPA be authorized to seek ways to alleviate the Path 15 bottleneck. In a public notice WAPA sought statements of interest from private parties willing to invest in the construction of Path 15 upgrades. 66 Fed. Reg. 31,909 (June 13, 2001). This resulted in WAPA's selection of PG&E and Trans–Elect as its partners in the building of a new 500 kV transmission line.

The terms of the partnership were memorialized in the Letter Agreement. Although the Letter Agreement dealt with many subjects, such as ownership rights, transmission system rights and responsibilities for raising capital to fund

construction, the only questions brought to this court are the Commission's approval of a 200 basis point incentive on PG&E's return from the new Path 15 facilities it constructs or upgrades and PG&E's calculation of depreciation expense using a 10 year life for those facilities.

The Public Utilities Commission of the State of California (CPUC), the petitioner here, opposed the PG&E incentives in the original § 205 proceeding, *Western Area Power Admin.*, 99 F.E.R.C. ¶ 61,306 (2002), and in a request for rehearing, *Western Area Power Admin.*, 100 F.E.R.C. ¶ 61,331 (2002). It has several arguments. The first is that the Commission erred in not requiring PG&E to submit cost of service data and other information required by 18 C.F.R. § 35.13. The regulation, and the other authorities CPUC cites, apply when a utility proposes a rate change "to supersede, supplement or otherwise change the provisions of a rate schedule filed with the Commission." 18 C.F.R. § 35.13(a). On the face of it, the regulation is inapposite. PG&E did not seek to change any of its existing rate schedules. It sought Commission approval, in advance of construction, of incentives when it makes a rate filing in the future with respect to the new Path 15 facilities. At that point the Commission will still have to determine whether the proposed rate schedules are just and reasonable. The Commission made this clear enough. "As we do not have before us an agreement establishing rates, we take no position, but rather reserve judgment, on all rate issues . . . not specifically delineated as rate principles" in the Letter Agreement. 99 F.E.R.C. at 62,277 n.2. And "[w]hile we are accepting the Letter Agreement for filing, [finding it just and reasonable,] we note, however, that it is only a preliminary step that allows the Path 15 participants to move forward and not the last opportunity for the Commission to review matters that are subject to its jurisdiction." *Id.* at 62,281.

The information before the Commission indicated that Path 15 was "a uniquely critical path," that congestion had "serious impacts on the ability to move power," that the Path 15 Project would cost $306 million, and that congestion costs to California energy consumers amounted to $222 million in just

the 16 months prior to December 2000. 100 F.E.R.C. at 62,539 & n.4. It was entirely proper for the Commission to make this cost comparison, even though – as CPUC points out – the costs of operating the upgrades will have to be added to the costs of constructing them. Of course, ratepayers will not have to pay the entire $306 million in one year; the cost will be spread out over the life of the facility. The Commission knew this and it knew as well that unless it approved the PG&E incentives, the project would likely not be built in the near future. The proposal embodied in the Letter Agreement was the only one that materialized in response to WAPA's public notice.

CPUC had argued that the Commission could not take into account the importance of a project in ratemaking proceedings and that it therefore acted improperly in considering the need for the Path 15 Project when it approved the PG&E incentives. In its reply, CPUC wisely disavowed this argument. A primary purpose of the Federal Power Act, and its counterpart, the Natural Gas Act, "was to encourage the orderly development of plentiful supplies of electricity and natural gas at reasonable prices." *NAACP v. FPC*, 425 U.S. 662, 670 (1976). To carry out this purpose the Commission may consider non-cost factors as well as cost factors in setting rates. *See Permian Basin Area Rate Cases,* 390 U.S. 747, 791, 815 (1968). Citing these and other authorities, the Commission correctly argues that using pricing incentives to increase the supply of energy available to customers is a valid, non-cost consideration in setting rates. *See Farmers Union Cent. Exch., Inc. v. FERC*, 734 F.2d 1486, 1503 (D.C. Cir. 1983); *Interstate Natural Gas Ass'n of Am. v. FERC*, 285 F.3d 18, 33–34 (D.C. Cir. 2002). Our decision thirty years ago in *Consumers Union v. FPC*, 510 F.2d 656, 660 (D.C. Cir. 1974), held as much: "reliance on non-cost factors has been endorsed by the courts primarily in recognition of the need to stimulate new supplies . . . ."

Although it was well-known that Path 15 was constrained and although this suggested a ready market if new transmission lines were built, no party stepped forward to construct upgrades. Only after WAPA issued its request for proposals

did it find participants for the project, and then only if incentives were offered. As the Commission also points out, the incentives amounted to a small portion of total energy costs and are greatly outweighed by the benefits consumers will receive. *See* Brief for Respondent at 18, citing *Removing Obstacles to Increased Electric Generation and Natural Gas Supply in the United States*, 94 F.E.R.C. ¶ 61,272, *reh'g denied*, 95 F.E.R.C. ¶ 61,225, at 61,765, *order on reh'g*, 96 F.E.R.C. ¶ 61,155, *order on reh'g*, 97 F.E.R.C. ¶ 61,024 (2001).

Rather than dispute the Commission's judgment regarding the potential benefits of the Path 15 Project to energy customers, CPUC argues that the costs of the incentives could have been avoided because either the Commission or CPUC could have compelled PG&E to perform the upgrades. The Commission's failure to consider this alternative, CPUC argues, rendered its decision arbitrary and capricious under cases such as *Farmers Union*, 734 F.2d at 1511. This objection was not raised in CPUC's rehearing petition and we therefore lack jurisdiction to consider it. *See* 16 U.S.C. § 825*l*(b); *City of Orville v. FERC*, 147 F.3d 979, 990 (D.C. Cir. 1998).

CPUC's only other argument worth mentioning is that the Commission unlawfully extended the deadline set in the *Removing Obstacles Orders*. "In light of the severe electric energy shortages facing California and other areas of the West in recent months . . . the Commission . . . has examined all of its rate and facility certification authorities in the areas of electric energy . . . to determine how it can help increase electric energy supply." 94 F.E.R.C. at 61,967. The Commission sought to foster "the installation of critical transmission investment," *id.* at 61,969, by offering incentives to increase the supply of energy. Among these were the same 200 basis point and 10 year depreciable life incentives contained in the Letter Agreement for PG&E. *Id.* at 61,969–70. The *Removing Obstacles Orders* offered these incentives, and others, for all projects in California (and elsewhere in the West) that increase transmission capacity, on condition that the project went into service by November 1, 2001. 94 F.E.R.C. at 61,969–70.

PG&E's construction of upgrades on Path 15 would not meet this deadline and, so CPUC argues, the Commission acted contrary to the condition set forth in the *Removing Obstacles Orders*. We think not. It is true that the Letter Agreement borrowed from those orders by duplicating the incentives and it is also true that WAPA justified the number of basis points and the extent of depreciable life by relying on the Commission's justifications for choosing these figures. But WAPA did not ask the Commission to extend the deadline in the *Removing Obstacles Orders* and the Commission, in addressing CPUC's contention, stated that its decision here was independent of those orders. Rather than automatically extending these two incentives to all projects, the Commission proceeded on the basis that the incentives were warranted in this particular case for the reasons we have already given. The *Removing Obstacles Orders* itself contemplated that after the deadline passed, the Commission still might approve incentives "on a case-by-case basis," which is what it has done here. 95 F.E.R.C. at 61,762.

We have considered and rejected CPUC's other arguments.

*The petition for judicial review is denied.*

1

ROGERS, *Circuit Judge*, concurring in part and dissenting in part: It may well be, as the court concludes, *see* Opinion at 3, that the Commission can properly depart from its usual ratemaking principles and procedures by pre-approving rate incentives to encourage the building of a needed project. But the Commission has failed to provide virtually any explanation, much less an adequate one, for why the specific incentives that it approved for PG&E are appropriate for the Path 15 expansion. Accordingly, I would grant the petition and remand the case to the Commission for further explanation.

The court is in agreement regarding the general principles that must guide our review. Nothing was *per se* impermissible about the Commission's decision to "pre-approve" elements of PG&E's rates for the Path 15 expansion in advance of a full rate case under 16 U.S.C. § 824d (2004). Although there has not yet been a formal rate proceeding to determine the final rates consumers will pay for transmission of energy through the expanded Path 15, an incentive-based multi-party agreement may, as counsel for the Commission argued, be a practical necessity to secure financing for some projects. Further, as a general matter, the Commission may take non-cost factors into account in setting rates. *See* Opinion at 4. Such factors include incentives to further other statutory policies, such as ensuring energy availability, even if those incentives create returns more generous than would result from cost-based ratemaking. *See In re Permian Basin Area Rate Cases*, 390 U.S. 747, 796–98 (1968); *Interstate Natural Gas Ass'n v. FERC*, 288 F.3d 18, 33–34 (D.C. Cir. 2002). Likewise, there is nothing inconsistent between the Commission's order approving incentives for PG&E and the *Removing Obstacles* orders the Commission issued to encourage energy availability during California's energy crisis. *See* Opinion at 5–6. While the Path 15 project would not have qualified for favorable rate treatment under the *Removing Obstacles* orders themselves, nothing in those orders precluded the Commission from offering similar incentives in the future.

These general principles include, however, a requirement that the Commission must ensure that rate increases that are

likely to follow as a result of the incentives are "needed, and [are] no more than is needed, for the purpose." In *Farmers Union Cent. Exch. v. FERC*, 734 F.2d 1486 (D.C. Cir. 1984), the court rejected incentive rates the Commission had set for oil pipelines, in light of the principle that while non-cost factors can permissibly be integrated into rates, the Commission "must see to it that the increase is in fact needed, and is no more than is needed, for the purpose." 734 F.2d at 1503 (quoting *City of Detroit v. FPC*, 230 F.2d 810, 817 (D.C. Cir. 1955)). As petitioner, the Public Utilities Commission of the State of California ("PUCC"), points out, in *Farmers Union* the court "expressly rejected the argument that the FERC's desire to increase capacity can support blanket application of ROE [i.e., return on equity] incentives in connection with an ROE incentive program," requiring the Commission instead to " 'calibrate the relationship between increased rates and the attraction of new capital' [and] . . . consider 'reasonable alternatives to its chosen policy and [ ] give a reasoned explanation for its rejection of such alternatives.' " Pet. Br. at 15 (quoting *Farmers Union*, 734 F.2d at 1503, 1511). The court recently reaffirmed this principle in *Mo. Pub. Serv. Com'n v. FERC*, 337 F.3d 1066, 1071 (D.C. Cir. 2003).

In general, cost-based ratemaking already ensures just and reasonable rates by providing for the recovery of costs, plus a rate of return on equity commensurate with investments bearing similar risk. If the Commission wants to depart from this formula and offer additional incentives, it must carefully tailor them, lest it run afoul of the requirement that rates be "just and reasonable." Otherwise, the "incentives" are nothing but windfalls. While the Commission's action here is not a final rate order, the Commission does not dispute that it has established two elements of a future rate order. *See Western Area Power Admin.*, 99 FERC ¶ 61,306, 62,277 n.2 (2002). If so, then the Commission must explain why this particular departure from cost-based ratemaking, namely, a 200 basis point increase to PG&E's return on equity and a 10–year depreciation schedule, was necessary or appropriate for the Path 15 project. These incentives are not insignificant: in scope, they are identical to the crisis rates the Commission

offered at the peak of the California energy shortage to encourage the quick completion of projects that could alleviate immediate shortages. *See Removing Obstacles to Increased Electric Generation and Natural Gas Supply in the United States*, 94 FERC ¶ 61,272, 61,969 (2001). It is not enough to state that the Commission may offer incentives generally, *see* Opinion at 4: the court must ask whether it reasonably decided to offer these incentives specifically. *Cf. Farmers Union*, 734 F.2d at 1503.

The Commission's only stated reason for accepting the particular incentives that PG&E requested was that the letter agreement between the Western Area Power Administration, TransElect and PG&E was the only bid for the Path 15 expansion project. The letter agreement was the "result of a request for proposals intended to achieve the most favorable terms possible," and "[a]lthough a proposal for upgrades to Path 15 with lesser or no incentives would have been welcomed, no such proposal materialized," so the letter agreement was the "best option available." *Western Area Power Admin.*, 100 FERC ¶ 61,331, 62,539 (2002). The Commission's only-bid explanation essentially posits that this is a take-it-or-leave-it offer: PG&E will only participate in the Path 15 project if given the rate incentives requested. But PG&E asked for three things: a 200 basis point increase to its return on equity, a ten-year depreciation schedule, and a reasonable industry target capital structure to be requested in a future rate filing. Although the Commission approved only the first two, PG&E did not withdraw from the project or request rehearing of the Commission's rejection of its requested capital structure. If the take-it-or-leave-it nature of the letter agreement necessitated acceptance of its terms, why did the Commission consider itself free to reject one of them? And why did the Commission conclude that the target capital structure was unnecessary to induce PG&E's participation in the project, but the return on equity and depreciation schedule were? The orders on review provide no answers to these questions because the Commission's analysis of the need for the incentives is confined to cursory statements that "under the unique circumstances of this case a 200 basis

point incentive is appropriate," 99 FERC ¶ 61,306 at 62,280, and that the requested incentives were the "best option available." 100 FERC ¶ 61,331 at 62,539. The PUCC may have waived its narrow contention that the costs of the incentives could have been avoided by compelling PG&E to perform the relevant work, *see* Opinion at 5, but not its broader contention that the Commission — unlike the PUCC, which was in the process of conducting hearings examining the alternative ways of alleviating Path 15 congestion when the Commission issued the orders here, over PUCC's objection — failed to compile any record evidence as to whether the incentives requested in the letter agreement were appropriate or engage in any reasoned consideration of alternatives, i.e., to correlate the size of the incentives with the need for them.

Because the Commission's cursory and piecemeal acceptance of the requested incentives in the letter agreement based on the importance of the project and its purported cost-benefits fails to meet its obligation, when incorporating non-cost based incentives into rates, to "see to it that the increase is in fact needed, *and is no more than is needed*," *Farmers Union*, 734 F.2d at 1503 (emphasis added), I would grant the petition and remand the case for the Commission to explain how the rate incentives are tailored to the Path 15 project.